IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DEMARQUIES JOHNSON, #178713 | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACT. NO.: 2:11-CV-360-WHA [WO] |
| SHARON BLAKELY, | ) ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Plaintiff, a state inmate, challenges the constitutionality of actions taken against him during his incarceration at the Easterling Correctional Facility in Clio, Alabama. The only remaining Defendant is Sharon Blakely, an ASA I-Mail Clerk at Easterling.[1] Plaintiff complains that Defendant refused to accept an envelope addressed to him that was 8" x 10" because Defendant said it was not an approved size envelope, and she returned it to the sender. Plaintiff alleges the prison mail policy is unconstitutional. Plaintiff states the mail came from an inmate pen pal subscription service, not simply a pen pal, which he paid for with stamps. He seeks injunctive relief and "such additional relief

---

[1] Plaintiff filed an amended and substituted complaint in accordance with the Court's order. *Doc. Nos. 7, 8.* Defendants Louis D. Boyd, Kenneth Sconyers, G. Babers, Victor Nieves, Sgt. F. Blakely, and Sgt. K. Drake were dismissed by prior order, as were Plaintiff's due process and equal protection claims related to a behavior citation. *Doc. Nos. 10,12.*

this court may deem just and proper." *Doc. Nos. 8, 25.*

In accordance with the orders of the court, Defendant filed an answer, special report, and supporting evidentiary material in response to the allegations contained in the complaint. Defendant argues the limit on mail size does not violate the First Amendment; Plaintiff cannot obtain injunctive relief before a finding of a constitutional violation; Defendant is entitled to qualified immunity as to any claim against her in her individual capacity, and Defendant is entitled to absolute immunity as to any claim against her for money damages in her official capacity. *Doc. No. 15.* The court then informed Plaintiff that Defendant's special report might at any time be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. *Doc. No. 16.* Plaintiff filed a response to the defendant's special report. *Doc. No. 25.* This case is now pending on Defendant's motion for summary judgment. Upon consideration of the motion, Plaintiff's opposition to the motion, and the supporting and opposing evidentiary materials, the court concludes that the motion for summary judgment filed by Defendant is due to granted.

## I. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there

is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-24.

The defendant has met her evidentiary burden and demonstrated the absence

---

[2] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*.  "'Shall' is also restored to express the direction to grant summary judgment." *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
> 
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive the defendant's properly supported motion for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible

at trial supporting his claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e). "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial,

summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational

trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Plaintiff has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment on his claim against

7

Defendant Blakely.

## II.  DISCUSSION

### A.  Qualified Immunity

Defendant argues she is entitled to qualified immunity.  Qualified immunity offers complete protection for government officials sued in their individual[3] capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (officials "shielded from liability for civil damages if their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known'" (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *see also Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002).  Qualified immunity is not merely a defense against liability but rather immunity from suit.  *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (citation

---

[3] It does not appear that Plaintiff sues Defendant in her official capacity.  To the extent Plaintiff does, Defendant is entitled to absolute immunity from monetary damages because neither the State nor Congress has waived Alabama's Eleventh Amendment immunity.  *See Kentucky v. Graham*, 473 U. S. 159, 166 (1985) (official capacity lawsuits are "in all respects other than name . . . treated as a suit against the entity"); *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997) ("A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, or Congress has abrogated the state's immunity . . . Alabama has not waived its Eleventh Amendment immunity . . . and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities.") (citations omitted).

omitted). To receive qualified immunity, the public official must first prove that she was acting within the scope of her discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendant was acting within the course and scope of her discretionary authority when the incident complained of occurred. Plaintiff must, therefore, allege facts that, when read in a light most favorable to him, show that Defendant is not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

In order to satisfy his burden, Plaintiff must show two things: (1) that Defendant committed a constitutional violation and (2) that the constitutional right Defendant violated was "clearly established." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). Courts now have discretion to determine the order in which the two prongs of Plaintiff's burden of proof are analyzed. *Pearson*, 555 U.S. at 236 (Courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case hand."). The court, therefore, analyzes whether Defendant violated Plaintiff's constitutional rights.

### B. First Amendment

Plaintiff maintains that Defendant wrongfully sent back an envelope addressed

9

to him because it was larger than allowed by prison policy.[4]  Plaintiff's claim that Defendant violated his constitutional rights regarding his mail implicates the First Amendment right to free speech.

> The prison rule provides:
>
> Inmates may not receive mail in any envelope larger than a standard 6"x10" envelope with the exception of legal mail, which must be mailed from a legal source/establishment. Occasional exceptions may be granted for greeting cards.  Any envelope larger than 6"x10" will be considered a package and must have the prior approval of the Warden or designee.

*Mailroom Operations SOP 448-01- Doc. No. 15-2* at 10.   Plaintiff claims that although "the inmate has the option to return the mail to the sender, Mail Clerk Blakely sent the mail back without giving the Plaintiff the option," in violation of prison mail procedures. *Pl.'s Resp. - Doc. No. 25* at 1.  A violation of a prison rule, alone, however, does not state a federal constitutional violation.  *See Al-Amin v. Smith*, 511 F.3d 1317, 1336 n.37 (11th Cir. 2008).  (prison "regulations themselves

---

[4] Plaintiff alleges he had a pen pal address subscription that he paid for with stamps, and it was returned to the sender because Defendant said Plaintiff cannot receive pen pal subscriptions. *Doc. 8* at 6.  In fact, Defendant states, inmates cannot use stamps as currency, and "[a]ll business transactions or purchases originating from inmates within the institution must be paid through that inmate's PMOD account." *Blakely Aff. - Doc. No. 15-2* at 1. Plaintiff does not appear to challenge the rule regarding currency, and such limits are permissible. *Cf. Van Poyck v. Singletary*, 106 F.3d 1558, 1560 (11th Cir. 1997) (per curiam) (limit on number of loose stamps possessed and "prison policy preventing inmates from possessing loose postage stamps is directly related to the legitimate security interest of eliminating 'the exchange of contraband among inmates'" (quoting *Little v. Norris,* 787 F.2d 1241, 1243 (8th Cir.1986)).

do not constitute constitutional law").

Generally, inmates possess a First Amendment right to send and receive mail. *Id.* at 1333 (discussing free speech claim). This right is, of course, subject to the limitations attendant to Plaintiff's status as a prisoner and the legitimate penological interests of jail administrators. *Id.*; *see also Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Nearly forty years ago, the Supreme Court stated that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Procunier v. Martinez*, 416 U.S. 396, 405 (1974). "[T]he problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree." *Id.* at 404-05. As the Court in *Turner* explained, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources. . . ." *Turner*, 482 U.S. at 84-85. Jail officials are therefore "accorded latitude in the administration of prison affairs[,]" *Cruz v. Beto*, 405 U.S. 319, 321 (1972), which necessarily includes "the [inescapable] withdrawal or limitation of many [inmate] privileges and rights." *Pell v. Procunier*, 417 U.S. 817, 822 (1974) (quotation marks and citation omitted); *see also Bell v. Wolfish*, 441 U.S. 520, 546 (1979). When a prison regulation impinges on an inmate's First Amendment right, the court considers four factors to determine whether the regulation "is reasonably related to legitimate penological interests." *Turner*, 482

U.S. at 78. First, the court considers whether there is a valid, rational connection between the regulation and the legitimate governmental interest that justifies it. The regulation also must be neutral and not related to the content of the expression. *Id.* at 90. Second, the court considers whether the inmate has alternative means of exercising the right. *Id.* Third, the court considers "the impact accommodation of the asserted constitutional right [] on guards and other inmates, and on the allocation of prison resources generally." *Id.* Finally, "the absence of ready alternatives is evidence of the reasonableness of a prison regulations." *Id.* If the inmate identifies "an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 91.

Defendant insists that she did not refuse to give Plaintiff his non-legal, non-greeting-card mail because it exceeded mail size regulations. Even if she did, however, the Court concludes the regulation is reasonably related to legitimate government interests. First, the regulation is content neutral, and according to the prison mail policy, the prison's overriding concern is "to ensure that incoming and outgoing mail is delivered promptly while curtailing the flow of contraband into the facility." *Def.'s Doc. 15-2* at 2. Incoming mail must be inspected for contraband or threats to institutional security, for example, mail "[c]ontaining plans to escape" or

12

"[c]ontaining information related to security threat group activity . . . ." *Id.* at 6. Plaintiff maintains that the mail did not come from an individual pen pal but instead came from a pen pal service company. *Pl.'s Resp. - Doc. No. 25* at 1. The rule, however, is not content-specific, and it applies to all mail. Matters related to prison security "are peculiarly within the province and professional expertise of corrections officials, and in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Pell,* 417 U.S. at 827. Second, Plaintiff may exercise his right by requesting that mail be sent to him within the envelope size limit, or by obtaining approval for it as a package. *Boyd Aff. - Doc. No. 15-3* at 2 (envelope that exceeds the size limit is "considered as a package and must have prior approval of the Captain before an inmate may receive it"). Third, as other courts have recognized, "correspondence between prison institutions facilitates the development of informal organizations that threaten the core functions of prison administration, maintaining safety and internal security." *Turner*, 482 U.S. at 92; *see also Oliver v. Powell*, 250 F. Supp. 2d 593, 608 (E.D. Va. 2002) (upholding prison limits on mail weight and size). Without limits on size, mail could take longer to process, causing delays or requiring additional personnel. *See Oliver*, 250 F. Supp. 2d at 608. The "ripple effect" of permitting any-sized mail into the institution is "at

the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike." *See Turner*, 482 U.S. at 92.  Thus, the impact on institutional security is not outweighed by Plaintiff's exercise of his First Amendment right. Finally, Plaintiff suggests no alternatives that would impose no more than a de minimis cost on the prison's legitimate penological goals.  *Id.* at 89-90. Consequently, the prison rule limiting envelope size for non-legal, non-greeting-card mail did not unconstitutionally burden Plaintiff's First Amendment rights.

Viewing the facts in the light most favorable to Plaintiff, as the court must at this stage in the proceedings, the court concludes that Plaintiff has not made out any viable claim against Defendant.  Consequently, the motion for summary judgment with respect to the receipt of mail presented against Defendant is due to be granted.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  Defendant Blakely's motion for summary judgment (*Doc. No. 15*)  be GRANTED.

2. Judgment be GRANTED in favor of Defendant.

3. This case be DISMISSED with prejudice.

4. The costs of this proceeding be taxed against Plaintiff.

It is further

ORDERED that on or before **January 21, 2014,** the parties may file an objection to the Recommendation.  Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit
handed down prior to the close of business on September 30, 1981.

Done this 6th day of January, 2014.

                                    /s/Charles S. Coody
                              CHARLES S. COODY
                              UNITED STATES MAGISTRATE JUDGE